

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Jeff D. Stinson, Vice-Chairman
State Affairs Committee
House of Representatives
Austin, Texas

Dear Sir:

Opinion No. 0-5147
Re: Effect of pending bill
on operators of planes
engaged in dusting
operations, and of the
grandfather clauses

By your letter of March 23, 1943, you enclosed
a copy of a pending bill consisting of some twelve pages,
too long to set out herein, and inquire as to whether or
not the bill would affect or regulate commercial airplane
operators who operate planes for the purpose of spraying
or dusting cotton and other crops to eliminate insects.

The bill is entitled: "An act dealing with the
regulation of the transportation of persons or property
in intrastate commerce by aircraft. . . ." The bill
vests in the Railroad Commission of Texas the authority
and duty of regulating airplane transportation.

A few of the statutory definitions with which
we are here concerned are:

"The term 'aircraft carrier' means any person
operating or causing to be operated any aircraft
for the transportation of persons and/or property
in intrastate commerce for compensation or hire
between two or more cities, towns or villages in
this State.

"The term 'common carrier' means any aircraft
carrier which holds itself out to the general public
to engage in the transportation in intrastate commerce
by aircraft of persons or property or any class or

classes thereof for compensation or hire whether over regular or irregular routes, airlanes or airways.

"The term ' contract carrier' means any aircraft carrier which, under individual or special contracts or agreements, engages in the transportation, in intrastate commerce, by aircraft of persons or property for compensation or hire.

The bill provides that no aircraft carrier shall operate within the State, either as a common carrier or as a contract carrier, without obtaining a certificate of convenience and necessity from the Railroad Commission.

Section 16, of the Act provides in part:

"The purpose of this Act is to regulate the operation and navigation of aircraft used in this State to transport persons or property for hire in intrastate commerce;. . ."

Without a given fact situation before us we cannot categorically answer your question. It is conceivable that certain contracts might be made between farmers and airplane operators, which would bring the operator thereof within the purview of the bill. The individual contracts should be made subject to scrutiny for the purpose of ascertaining whether or not such contracts provided for the transportation of property for hire, however, we do not believe that a contract entered into by and between a farmer and an airplane pilor or commercial airplane operator by which the pilot or operator obligated himself to spray or dust poisons upon the farmer's crops for an agreed consideration, would bring the operator thereof within the regulatory provisions of the bill. We do not believe that he would be carrying "persons or property for compensation or hire". His contract would be one for service. The carrying or transporting of such poisons would be but incidental to the performance of his contract for service.

By supplemental request from Honorable John Lee Smith, Lieutenant Governor, we are requested to render an opinion as to whether or not private fliers of aircraft and also owners of aircraft who have been in the business of flying persons for hire over irregular routes and irregular schedules to any point or points in Texas would come under the grandfather clause of either section four or section five of said bill.

The bill referred to by the Lieutenant Governor is Senate Bill 51, which is the identical bill considered hereinabove.

We believe the private fliers and aircraft owners mentioned are within the purview of the bill and subject to regulation thereunder.

Sections four and five of the bill deal with common carriers and contract carriers and read as follows:

"After the effective date of this Act no aircraft carrier shall operate as a common carrier in intrastate commerce without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding that the public convenience and necessity require such operation. Provided, however, if any such carrier or predecessor in interest was in bona fide operation as a common carrier by aircraft on December 1, 1942, over the routes, airlanes and airways or within the territory for which application is made and has so operated continuously since that time, the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application is made for such certificate to the Commission, in compliance with this Act within 120 days after the effective date of this Act. If such application is timely filed as required herein the applicant shall be entitled to continue to operate until his application is acted on by the Commission.

"After the effective date of this Act no aircraft carrier shall operate as a contract carrier without first having obtained from the Commission a contract carrier permit issued in compliance with the requirements of this Act, pursuant to a finding by the Commission that the proposed operation will be consistent with the public interest. Provided, however, if any such carrier or predecessor in interest was in bona fide operation as contract carrier by aircraft on December 1, 1942, over the routes, airlanes and airways or within the territory for which application is made and has so operated continuously since that time, the Commission shall issue such permit without further proceedings if application is made to the Commission for such permit, in compliance

with this Act, within 120 days after the effective
date of this Act. If such application is timely filed
as required herein the applicant shall be entitled to
continue to operate until his application is acted on
by the Commission.

We do not determine whether the aircraft carriers
inquired about are common carriers or contract carriers. That
would depend upon a more detailed description of their method
of operation. It is our opinion, however, that they would be
entitled to the benefit afforded by the grandfather clauses of
section four or five, depending upon a prior determination of
the category into which they should fall.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By       Lloyd Armstrong
                Assistant

LA:ncd

ncd       APPROVED MAR. 26, 1943

(signed)

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION COMMITTEE
BY  BWB
    Chairman